IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

            Plaintiff,

vs.                             **Case No. 04-40139-01-RDR**

MICHAEL JOHN COFFEY,

            Defendant.

## MEMORANDUM AND ORDER

This matter is presently before the court upon the following motions filed by the defendant: (1) motion to suppress; (2) motion to disclose expert testimony; and (3) motion for notice of evidence. The court held a hearing on defendant's pretrial motions on April 7, 2005. The court is now prepared to rule.

The defendant is charged in a two-count indictment. Jose Garcia Bautista a/k/a Jesue Lopez Sanchez is named as a co-defendant. The defendant is charged with possession with intent to distribute approximately 2.9 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1)[Count 1] and conspiracy to possess with intent to distribute approximately 2.9 kilograms of cocaine in violation of 21 U.S.C. § 846 [Count 2]. The charges arise from an encounter between the defendant and Kansas Highway Patrol (KHP) troopers at a rest stop on Interstate 70.

MOTION TO DISCLOSE EXPERT TESTIMONY

The defendant seeks an order requiring the government to

disclose whether it intends to rely upon expert testimony at trial; and if so, to identify and disclose the content and bases of any such testimony as required by Fed.R.Crim.P. 16(a)(1)(G). The government has indicated that it would provide the disclosures if any such witness is called.

The court shall grant this motion. The court directs the government to provide this information at least 14 days prior to trial.

MOTION FOR NOTICE OF EVIDENCE

The defendant seeks an order requiring the government to indicate whether it intends to introduce any evidence under Fed.R.Evid. 404(b) or 807. The government has responded that it does not at this time plan to introduce evidence under either Rule 404(b) or 807. The government has also indicated that, if this changes, it will notify the defendant sufficiently in advance of trial so the evidence can be contested. With the response of the government, the court shall deny this motion as moot.

MOTION TO SUPPRESS

The defendant seeks to suppress all evidence arising from his encounter with law enforcement officers at a rest stop on Interstate 70 on May 15, 2004. He contends that he was unlawfully detained when a KHP trooper obtained his license and

ran a computer check on it without reasonable suspicion. He further argues that his subsequent consent to search his vehicle was the fruit of this unlawful detention. Accordingly, he asserts that all evidence seized during that encounter should be suppressed.

At the hearing on this motion, the court heard testimony from only one witness, KHP trooper Allan Lytton. Based upon the evidence presented, the court now makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. On May 15, 2004, at approximately 12:20 a.m., KHP Trooper Allan Lytton drove into the rest area at mile post 187 on Interstate 70 on a routine patrol. He observed two men near the restroom who he believed were arguing. He could not hear anything they said, but did observe hand gestures that he thought showed a heated argument in progress. He believed the two men were about to start fighting. As he drove up in his marked patrol car, he thought both men observed him. He noticed that one of the men began walking to the restroom and the other began walking towards their vehicle, a maroon Jeep Cherokee. Trooper Lytton thought the men were trying to avoid him.

2. Trooper Lytton has been with the KHP for approximately five years. During his employment, he has received considerable

training, including a number of classes on drug interdiction techniques. Trooper Lytton had previously participated in over twenty drug arrests. Prior to his employment with the KHP, he was a school teacher.

    3.   Trooper Lytton's patrol car is equipped with a video camera. He turned the camera on as he pulled in behind the Jeep Cherokee. The camera captured most of the events that occurred. The camera also had audio capabilities, and most of the conversations that occurred were recorded.

    4.   Trooper Lytton exited his car and approached the Jeep Cherokee. He noticed that the vehicle had an Arizona license tag. As he went by the rear window, he put his flashlight up to the rear window and looked inside. He went to the passenger side of the vehicle and made contact with the man who had recently entered it. In a conversational tone, he asked the man if everything was alright. He suggested it appeared that the two men had been arguing. The man in the Jeep Cherokee, who was later identified as Jesue Lopez Sanchez, indicated that everything was fine and that he was not arguing with the other man. Trooper Lytton asked about their travel plans. Sanchez replied, "We're going to New York." Trooper Lytton thought Sanchez appeared extremely nervous.

    5.   At this point, the man who had gone towards the restroom

walked up to the vehicle. This man, who was subsequently identified as Michael John Coffey, asked Trooper Lytton, "Where is Baray County?" Trooper Lytton said there was no such county in Kansas. Trooper Lytton asked him where they were going. Coffey said, "Ohio." Trooper Lytton then asked why. Coffey indicated they were traveling there to visit a friend. Trooper Lytton asked him how long they were staying. Coffey replied, "Not long."

  6. Trooper Lytton then asked Coffey, "Do you any ID on you I can look at?" Coffey responded, "Absolutely." He then provided Trooper Lytton with an Arizona driver's license. As Coffey handed him the license, Trooper Lytton noticed that Coffey's hand was visibly shaking. Trooper Lytton thought that Coffey displayed unusual nervousness. Trooper Lytton then told Coffey, "Let me check this real quick." Coffey again replied, "Absolutely." Trooper Lytton then asked Coffey if Sanchez had any identification. Coffey retrieved a Mexican driver's license from Sanchez and provided it to Trooper Lytton. Trooper Lytton told Coffey that he would check the licenses and be back in a few minutes. At this time, Trooper Lytton was suspicious of the activities of Coffey and Sanchez. He thought they might be engaged in criminal activity. His suspicion was based upon the following: (1) the extreme nervousness displayed by Coffey and

Sanchez; (2) the conflicting stories Coffey and Sanchez told concerning their travel plans; (3) the vehicle had an Arizona license plate, Coffey had an Arizona driver's license, and Arizona is a known source state for illegal drugs; and (4) the small amount of luggage that the men had.  The last factor was not mentioned in any written materials prepared by Trooper Lytton following the incident.  He stated during the hearing that he had observed two small duffel bags in the second seat of the vehicle.  He thought this luggage was not adequate for a trip of the scope noted by Coffey and Sanchez.  He described the bags with a hand gesture that showed them to be about 1 foot wide and two feet long.  He further acknowledged, however, that he had observed other belongings in the rear of the vehicle, but he could not remember what was back there.  He suggested he made the government's attorney aware of the small amount of luggage carried by the two men, but he could not explain why this information had not been noted in the government's response to the defendant's motion to suppress.  He admitted this was the first time that he had publicly stated this was an additional basis for his reasonable suspicion.

    7.  Trooper Lytton returned to his patrol car and sought information on the licenses from his dispatcher.  He also sought the presence of another trooper.  The other trooper arrived in

about five minutes. While Trooper Lytton waited on information, the other trooper engaged in conversation with Coffey. Coffey and the other trooper spoke for several minutes in what appeared on the videotape to be a congenial discussion.

8. Trooper Lytton determined there were no problems with the driver's licenses supplied by the two men. He also learned there were no problems with the vehicle. The determination of the validity of the licenses and the tag took approximately nine minutes. Trooper Lytton exited his car and returned the licenses to the men. He told Coffey, "Have a safe trip. Appreciate your cooperation." He then asked if he could ask him a few more questions. Coffey said, "Sure." Trooper Lytton told Coffey that "a lot of illegal drugs come down this highway." He then asked Coffey if had any illegal drugs in his vehicle. Coffey said, "No." Trooper Lytton then asked if he could search the vehicle. Coffey agreed to the search.

9. Trooper Lytton began searching. He saw signs of tampering in the area of the gas tank underneath the vehicle. He called for a drug dog. A local sheriff's deputy with a drug dog arrived approximately fifteen minutes later. The drug dog apparently alerted. The gas tank was later removed and three packages containing cocaine were found.

*Conclusions of Law*

1.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; <u>Whren v. United States</u>, 517 U.S. 806, 809 (1996). There are three general types of citizen-police encounters: (1) consensual encounters that are not Fourth Amendment seizures as they involve a person's voluntary cooperation with an officer's non-coercive questioning; (2) investigative detentions which are Fourth Amendment seizures justified only if there is reasonable suspicion that the person has committed or is committing a crime; and (3) arrests which are Fourth Amendment seizures characterized by highly intrusive or lengthy detention and justified only if there is probable cause to believe that the person has committed or is committing a crime. <u>United States v. Seslar</u>, 996 F.2d 1058, 1060 (10th Cir. 1993).

2.  The initial encounter between Trooper Lytton and the two men at the rest area was consensual. The defendant does not dispute that the initial discussion between the men was consensual. Trooper Lytton came into contact with the men after they were already stopped. In these circumstances, he had the authority to ask a limited number of questions without the encounter becoming an investigative detention. He did so and he

did so properly without implicating the Fourth Amendment.

    3.  The court must next consider whether Trooper Lytton then "seized" within the meaning of the Fourth Amendment the men when he asked for identification and ran computer checks on the documents provided as well as the license tag of the vehicle. In the ordinary traffic stop, the law is settled that an officer can request a driver's license, run a computer check and issue a citation.  United States v. Fernandez, 18 F.3d 874, 878 (10th Cir. 1994).  Here, however, the men had not been stopped for a traffic violation.  Rather, Trooper Lytton had simply encountered them at a rest area and confronted them to determine if any problems were present based upon his view that they appeared to be arguing.  He quickly learned that no problems existed between the two men.  At this point, after a few questions to Coffey about his travel plans, he asked them if they would produce some identification.  The two men readily provided identification.  The Supreme Court has suggested that "interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute, a Fourth Amendment seizure."  INS v. Delgado, 466 U.S. 210, 216 (1984); see also United States v. McSwain, 29 F.3d 558, 562 n. 1 (10th Cir. 1994) ("[W]hen police officers engage in a 'consensual encounter' with a particular individual, 'they may

9

ask questions of that individual [and] ask to examine the individual's identification,' even though the officers have no reasonable suspicion."). The question, however, whether the retention of the driver's license to perform a computer check constitutes a seizure is not entirely clear. If the officer has reasonable suspicion that the person is involved in criminal activity, he may stop the person for a brief time and take additional steps to investigate further. Hiibel v. Sixth Judicial Dist. Ct. of Nevada Humboldt Co., 542 U.S. 177, 124 S.Ct. 2451, 2458 (2004). It is the situation where the officer lacks reasonable suspicion that the law becomes murky. In the context of the traffic stop, the Tenth Circuit has adopted a bright line test. The court has determined that a person is detained when a law enforcement officer retains possession of that person's driver's license. See United States v. Mendez, 118 F.3d 1426, 1430 (10th Cir. 1997). In other circumstances, the Tenth Circuit has determined the retention of a driver's license for a brief period of time to conduct a computer check does not trigger Fourth Amendment scrutiny. See United States v. Himes, 25 Fed.Appx. 727, 2001 WL 1241136 (10th Cir. 2001) (unpublished) (officer's encounter with motorist who had disabled vehicle was consensual and retention of driver's license for short period of time does not change consensual

nature of encounter).

4. After a careful review of the underlying facts, the court is persuaded the Fourth Amendment was not violated here. The court initially believes that, even without reasonable suspicion, Trooper Lytton did not detain Coffey. He possessed the driver's license for only a short period of time, less than ten minutes. The totality of the circumstances suggest that Coffey was not detained. Trooper Lytton did not threaten or use coercive tactics with Coffey. He did not display a weapon or physically detain him. Coffey readily acquiesced when Trooper Lytton asked if he could provide some identification. Coffey could have refused the request or he could have requested the license back. He did neither and the remaining circumstances suggest that the encounter remained consensual. See United States v. Dunigan, 884 F.2d 1010, 1015 (7th Cir. 1989) (defendants not detained where police made contact with defendants as they sat in van which was stopped at a street corner; officers asked about travel plans and asked to see licenses and ran status check of licenses); see also Lightbourne v. State, 438 So.2d 380, 387-88 (Fla. 1983) (defendant was not detained where police officer confronted defendant who was sitting in parked car, asked a few simple questions, requested defendant's driver's license, and ran routine check on his car

and driver's license).

5. We now turn to the validity of Coffey's consent to the search.  A defendant who voluntarily consents to a search waives his Fourth Amendment rights, and the police officer may conduct the search without probable cause or a warrant.  See <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 235 (1973).  In assessing the voluntariness of an individual's consent, we examine the totality of the circumstances.  See <u>United States v. Mendenhall</u>, 446 U.S. 544, 557 (1980); <u>Schneckloth</u>, 412 U.S. at 227.

6. Coffey's contention that his consent was involuntary is entirely dependent upon his argument that he gave the consent during an illegal detention.  He does not make the argument that his consent was involuntary if obtained during a consensual encounter.  Nevertheless, we have reviewed the circumstances of his consent and concluded that it was freely given.  Coffey agreed to the search of his vehicle without hesitation.  Trooper Lytton made a polite request to search the Jeep Cherokee and Coffey readily agreed.  Trooper Lytton did not use a commanding voice or communicate in any way that consent was required.  Under these circumstances, the court finds that the consent was voluntary and thus the search was legal.

7. If forced to reach the issue, the court would find that reasonable suspicion existed for the detention of Coffey and his

12

passenger.  The court admits this is a close question.

8.   An officer need only have reasonable articulable suspicion that criminal activity is afoot to justify a brief investigative detention.  Terry v. Ohio, 392 U.S. 1, 30 (1968). The Supreme Court has repeatedly held that it is the totality of the circumstances, not the supporting factors taken in isolation, that must be considered in deciding whether the facts support reasonable suspicion.  United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Cortez, 449 U.S. 411, 417-19 (1981).  "The government bears the burden of proving the reasonableness of the officer's suspicion."  United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998).

9.   In evaluating the factors alleged in support of reasonable suspicion, the court "judge[s] the officer's conduct in light of common sense and ordinary human experience." Mendez, 118 F.3d at 1431. "This approach is intended to avoid unrealistic second-guessing of police officers' decisions and to accord appropriate deference to the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions."  United States v. Gutierrez-Daniez, 131 F.3d at 939, 941 (10th Cir. 1997), cert. denied, 523 U.S. 1035 (1998) (quoting United States v. Alvarez, 68 F.3d 1242, 1244 (10th Cir. 1995), cert. denied, 517 U.S. 1143 (1996)).  As

explained in <u>Mendez</u>, the court must approach this issue as follows:

> "Our task...is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious," <u>United States v. Lopez-Martinez</u>, 25 F.3d 1481, 1484 (10th Cir. 1994), but rather to determine whether the totality of the circumstances justify the detention. [<u>United States v.</u>] <u>McRae</u>, 81 F.3d [1528] at 1534 [(10th Cir.1996)]. We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, <u>id</u>., remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (citation omitted).

118 F.3d at 1431.

10. Trooper Lytton indicated at the hearing the following factors provided reasonable suspicion: (1) the extreme nervousness displayed by Coffey and Sanchez; (2) the conflicting stories concerning travel plans; (3) the vehicle and Coffey were from Arizona--a known source state for illegal drugs; and (4) the small amount of luggage that the men had. Each of the justifications offered by the officer in isolation would be insufficient to justify reasonable suspicion. The court, however, must consider the totality of the circumstances.

11. The court did not find Trooper Lytton's testimony credible on the addition of the "inadequate luggage" as a justification for the continued detention of Coffey and his

14

passenger. Trooper Lytton failed to include this fact as a basis for his suspicion of the occupants of the Jeep Cherokee in any of his following written reports. Moreover, the evidence presented to the court fails to support his reliance on this factor. Trooper Lytton testified that he believed the occupants did not have sufficient luggage to make a trip of the nature suggested by them. He noted that he saw only two small duffel bags in the second seat of the Jeep Cherokee. The court is not persuaded that his characterization of this luggage was contrary to the nature of the trip suggested by the occupants. Coffey had told Trooper Lytton that the duration of their visit to Ohio was "not long." The government did not present the duffel bags to the court, but Trooper Lytton's description of the bags using his hands during the hearing indicated that they may have been large enough to provide clothing for a short trip. Inadequate luggage may provide a basis for reasonable suspicion, see United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995) (considering lack of luggage--only three small pieces of luggage--for a two-week trip to Los Angeles) and United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990), cert. denied, 499 U.S. 924 (1991) (considering inadequate amount of luggage for two-week trip), but we do not find the government has provided sufficient evidence to support this justification here. See United States

15

v. Hinojos, 74 F.3d 1250, 1996 WL 16823 at **4 (10th Cir. 1996) (unpublished) (defendant's single suitcase which police officer described as two feet by three feet did not raise suspicion of illegal activity because it was too small).

    12.   The court shall turn to a consideration of the other factors noted by Trooper Lytton. The Tenth Circuit has

> "repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on. . .nervousness. . .'must be treated with caution.'" United States v. Fernandez, 18 F.3d 874, 879 (10th Cir.1994) (quoting United States v. Millan-Diaz, 975 F.2d 720, 722 (10th Cir. 1992)). Nervousness alone cannot support reasonable suspicion of criminal activity. See id. at 880. This is because it is common for most people "to exhibit signs of nervousness when confronted by a law enforcement officer" whether or not the person is currently engaged in criminal activity. [United States v.] Wood, 106 F.3d [942] at 948 [(10th Cir. 1997)]. Thus, absent signs of nervousness beyond the norm, the court will discount the detaining officer's reliance on the detainee's nervousness as a basis for reasonable suspicion. See id.

Salzano, 158 F.3d at 1113.

    13.   The court credits Trooper Lytton's testimony that the nervousness of Coffey and Sanchez were beyond the norm expected in a routine traffic stop. Although not sufficient to support a finding of reasonable suspicion, the two men's extreme nervousness is a circumstance supporting reasonable suspicion.

    14.   On numerous occasions, the Tenth Circuit has said that "contradictory or implausible travel plans can contribute to a

16

reasonable suspicion of illegal activity." See Mendez, 118 F.3d at 1431.; McRae, 81 F.3d at 1535; United States v. Kopp, 45 F.3d 1450, 1453-54 (10th Cir.), cert. denied, 514 U.S. 1076 (1995). Coffey and Sanchez provided inconsistent information about the final destination of their trip. Case law makes clear that one of the hallmarks of drug trafficking is the inability of the enterprise's participants to get their travel plans straight. The glaring inconsistency of the travel plans offered by Coffey and Sanchez is a circumstance supporting reasonable suspicion.

    15.   The fact that a vehicle or individual hails from a purported known drug source area is a circumstance that can be considered in determining reasonable suspicion, albeit a weak one. United States v. Williams, 271 F.3d 1262, 1270 (10th Cir. 2001). Trooper Lytton testified that Arizona was well known as a source of narcotics. Trooper Lytton testified that several of his arrests for illegal drugs had involved individuals from Arizona. Based upon Trooper Lytton's training and experience in criminal drug interdiction, the court finds his testimony credible that Arizona is known and considered to be a source area for narcotics. This fact alone is not enough to qualify as reasonable suspicion, but it does serve as a factor for assessing other facts and as a context for drawing other reasonable inferences.

16. In sum, the court finds from a totality of the circumstances that Trooper Lytton had reasonable suspicion to detain Coffey and Sanchez, even if the retention of the driver's license to conduct a computer check by Trooper Sanchez is not viewed as consensual. Any of the factors noted previously is not by itself proof of any illegal conduct. But, taken together, they amount to reasonable suspicion.

17. Accordingly, the court finds that the search in this case did not violate the Fourth Amendment. The defendant's motion to suppress must be denied.

**IT IS THEREFORE ORDERED** that defendant's motion for disclosure of evidence (Doc. # 10) be hereby denied as moot.

**IT IS FURTHER ORDERED** that defendant's motion for disclosure of expert testimony (Doc. # 11) be hereby granted. The court directs the government to provide this information at least 14 days prior to trial.

**IT IS FURTHER ORDERED** that defendant's motion to suppress (Doc. # 13) be hereby denied.

**IT IS SO ORDERED.**

Dated this 18th day of April, 2005 at Topeka, Kansas.

                                        s/Richard D. Rogers
                                        United States District Judge